Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50297 | **DATE** | 5/16/2001 |
| **CASE TITLE** | March vs. Greater Rockford Airport Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, defendant's motion for summary judgment is granted in part and denied part. The parties are hereby ordered to schedule a settlement conference with the Magistrate Judge within the next 21 days.

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

DOCKETED
MAY 16 2001

GRETA MARCH,                          )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )   No. 99 C 50297
                                      )
GREATER ROCKFORD AIRPORT              )
AUTHORITY,                            )
                                      )
        Defendant.                    )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff, Greta March, has filed a first-amended complaint against defendant, Greater Rockford Airport Authority ("the Airport"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), and venue is proper as the Airport resides within this district and division, see 42 U.S.C. § 2000e-5(f)(3). With some of March's claims already dismissed in a previous order, the Airport has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on what remains of March's complaint: two instances of retaliation for opposing what she perceived to be unlawful employment discrimination and a claim of

a racially hostile work environment.

## II. **ANALYSIS**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; <u>Michas v. Health Cost Controls of Ill.</u>, 209 F.3d 687, 692 (7th Cir. 2000). To determine whether a genuine issue of material fact exists, the court views the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. <u>See</u> <u>Michas</u>, 209 F.3d at 692. A genuine issue for trial exists only when a reasonable jury could find for the nonmoving party based on the record as a whole. <u>See</u> <u>id.</u> However, the mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. <u>See</u> <u>id.</u>

### A. <u>Retaliation</u>

As both parties have assumed March lacks any direct evidence of retaliation and have proceeded under the familiar <u>McDonnell Douglas</u> burden-shifting framework, the court will do the same. This requires March to first establish a <u>prima facie</u> case of

retaliation by presenting sufficient evidence that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected expression and the adverse action. See Russell v. Board of Trustees of the Univ. of Ill., 243 F.3d 336, 344 (7th Cir. 2001). The Airport must then come forward with a legitimate business reason for taking the employment action. See id. If it does so, March may survive summary judgment only by presenting sufficient evidence that the Airport's justification is pretextual. See id.

The court first finds March engaged in statutorily protected activity when she had a meeting in December 1996 with two of her superiors, Chief Rick Rubendall and Steve Johnson. According to March, whose version the court must accept at this point, she told Rubendall and Johnson at this meeting she believed some of her fellow employees were harassing and discriminating against her because of her sex and race (African-American). (LR 56.1(a) ¶ 22; LR 56.1(b) ¶¶ 5, 7; Def. Exh. H) See Krause v. City of La Crosse, No. 00-2488, 2001 WL 357462, at *4 (7th Cir. Apr. 10, 2001) (assuming but not deciding informal complaint of discrimination to employer constitutes protected expression under Title VII). Next, although questionable (especially since March

-3-

does not argue the point[1]), the court assumes *arguendo* March's first claimed act of retaliation – the removal of her supervisory responsibilities as a corporal in May 1997 – amounts to an adverse employment action. See Dahm v. Flynn, 60 F.3d 253, 258-59 (7th Cir. 1994) (holding that terminating supervisory authority over other employees can constitute adverse employment action). On the other hand, the Airport does not dispute for purposes of this motion that March suffered an adverse employment action the second time she claims the Airport retaliated against her when it placed her on an involuntary, unpaid maternity leave in August 1997 rather than give her a light duty assignment. See Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 869 (7th Cir. 1995). Finally, while the temporal proximity between March's protected activity and the dates of the alleged retaliation – five and eight months, respectively – is rather tenuous to support an inference of retaliatory motive, see Oest v. Illinois Dep't of Corr., 240 F.3d 605, 616 n.8 (7th Cir. 2001), March has pointed out other evidence to establish the necessary causal

---

[1] In fact, March has not at all argued she met her burden of proving a prima facie case – a rather dangerous tactic considering the Airport raised a number of issues to show why she had *not* done so. March's response brief is also troubling in other respects, not the least of which is her failure to cite a single point of authority.

link. Specifically, March testified that, during a subsequent meeting between herself and Johnson in April 1997, Johnson told her to "hush up" and "leave things alone" regarding her complaints of race and gender discrimination, or else she would lose her supervisory powers and he would not "make things available" for her if she were to become pregnant a second time.[2] (LR 56.1(b) ¶ 11) Because Johnson was one of the decision makers involved in both employment actions at issue and was present during the December 1996 meeting, these comments provide, if not direct evidence, at least sufficient circumstantial evidence to overcome the temporal gap between March's informal complaint and those employment actions. However, in light of other circumstances surrounding the loss of March's supervisory powers in May 1997, which are discussed below, March is unable to show that particular employment action would have occurred "but for" her protected activity. See Basith v. Cook County, 241 F.3d 919, 933 (7th Cir. 2001). In contrast, no similar set of circumstances surround the decision to place March on an involuntary maternity leave, so the court finds March has shown a causal connection and, consequently, established a prima facie

---

[2] Once again, on a motion for summary judgment, the court must accept as true March's account of what was said during this meeting, not the Airport's.

-5-

case, with respect to the August 1997 employment action.

As for the loss of March's supervisory duties, it is undisputed that, during May 1997, the Airport was in the middle of a union election involving its public safety employees and the Teamsters Union ("the Union"). (LR 56.1(a) ¶ 32) Before the election, the Airport, the Union, and the Illinois State Labor Relations Board entered into a stipulation that defined the collective bargaining unit to include all full-time public safety employees "in the rank of patrol officer and corporal." (Id. ¶ 33) Because the Illinois Public Labor Relations Act, 5 ILL. COMP. STAT. 315/1 et seq. ("IPLRA"), prohibits a bargaining unit from including both employees and supervisors, see id. 315/3(s)(1), the Airport had to remove whatever supervisory authority the corporals possessed in order for them to be able to vote in the election and be part of the bargaining unit. And, as March was one of the Airport's three corporals, it removed her supervisory powers to comply with the IPLRA and the stipulation.

Rather than dispute the fact that the IPLRA, combined with the inclusion of corporals in the bargaining unit, required the Airport to remove her supervisory powers, March says instead she was never told this was in fact the reason her supervisory authority had been taken away. According to March, Johnson led

her to believe her supervisory powers had been removed because he had received complaints from other officers to the effect that she was unqualified to run her shift. Thus, although she does not quite frame it in this way, March seems to argue the unionization issue is a post hoc rationalization and, as such, is evidence of pretext. See Perfetti v. National Bank of Chicago, 950 F.2d 449, 456 (7th Cir. 1991). The court finds this argument unavailing for a number of reasons.

To begin, March's argument incorrectly assumes she has established her prima facie case. As noted above, March does not dispute the union stipulation was an entirely legitimate and necessary reason for removing her supervisory duties because the IPLRA prohibits non-supervisory employees from being in the same bargaining unit as supervisory employees. Nor does she dispute the stipulation was signed well before her supervisory powers were taken away. In fact, the union election was no secret to March, who acknowledges she voted in it. (LR 56.1(a) ¶ 33) Finally, March admits the two other corporals, both of whom were Caucasian males, also had their supervisory authority removed around the same time she did.[3] (LR 56.1(a) ¶ 36) Given all of

---

[3] Although March says this was done only after she complained and the Airport realized it could not take just her powers away without taking everyone's, all of this is pure

-7-

this, it is inescapable that the termination of her supervisory authority would have occurred regardless of any retaliatory motive. The bottom line is that the Airport had to remove all of the corporals' supervisory powers due to the impending union election. Because March cannot show this employment action would have occurred "but for" her protected expression, she has failed to prove the causation element of her prima facie case. See King v. Preferred Technical Group, 166 F.3d 887, 892 (7th Cir. 1999).

Alternatively, March's retaliation claim based on the May 1997 employment action would be equally doomed even if the court were to find March had met her prima facie case because she cannot rebut as pretextual the Airport's stated reason for removing her supervisory powers. It is true, as March seems to suggest, that an employer's change in stories - giving one reason at the time of an adverse employment action but then giving a different reason later on at trial - can be used to show the new reason is a pretextual after-the-fact justification. See Perfetti, 950 F.2d at 456. But because the reason the Airport now relies on - i.e., the unionization issue - was obviously known to the Airport when it removed March's supervisory powers, the mere fact that it did not communicate this reason to her at

---

speculation on March's part.

that time does not make it an improper post hoc explanation. Moreover, this "new" reason is overwhelmingly supported by the documentary evidence, see id., and has gone unchallenged by March. In short, there is simply no basis upon which to conclude the union election is any way a lie or "phony reason" for the May 1997 employment action. See Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1008 (7th Cir. 2000).

Turning to the Airport's decision to place March on an involuntary maternity leave under the Family and Medical Leave Act, 29 U.S.C. § 601 et seq., in August 1997, the Airport contends it was unable to give March any light duty assignments because there were no such positions available at the time and, even if there were, March's medical restrictions precluded her from performing them. The court, however, finds March has presented sufficient evidence (just barely) to show these reasons were pretextual.

After March became pregnant in July 1997 and her physician placed certain physical restrictions on her that prevented her from performing her normal duties as a corporal, she inquired about various light duty positions she believed were available. For example, March asked about working part-time as a security screener. (LR 56.1(a) ¶ 55; LR 56.1(b) ¶ 23) Although Chief

Rubendall acknowledged in his deposition that a screener position was opening up soon because one of the other screeners was leaving, he testified that the "screener's position wasn't really for hiring because screening was dropping off" and the other three screeners would be absorbing the hours of the screener who was leaving. (Pl. Exh. 3, Rubendall dep., p. 29) The only reason Rubendall offered for giving these extra hours to the other three screeners rather than March is that they "wanted more hours." (Id.) But obviously so did March. Besides the question-begging nature of Chief Rubendall's explanation, why the other three screeners were preferred over March seems all the more suspect considering that the Airport had previously accommodated March during her first pregnancy in 1994 by placing her in various clerical and light duty positions, even though she had the same sort of physical restrictions then as she did in 1997. (LR 56.1(b) ¶ 21) And as for the restrictions themselves, there is testimony by both March and one of the Airport's own employees, which the Airport does not seem to dispute, that pregnant employees had been allowed to work as security screeners in the past and that the screener position does not require lifting, so that March could have performed the job despite her physical restrictions. (Pl. Exh. 8, Edgren dep., p. 25; Pl. Exh.

<em>-10-</em>

2, March dep., pp. 65-66)  Taken together, the court finds this evidence sufficient (though perhaps not by much) to raise questions of fact regarding the Airport's reasons for placing March on an involuntary maternity leave in August 1997 rather than allowing her to perform light duty work.  See Dunnings, 63 F.3d at 870 (where plaintiff brought claim that employer placed her on involuntary maternity leave rather than assign her to light duty in retaliation for complaining about alleged sexual harassment, evidence that employer had regular practice of assigning pregnant workers to light duty jobs could be used to rebut as pretextual employer's stated reason that none of its light duty positions fit within plaintiff's lifting restrictions).

B.  **Hostile Work Environment**

To survive summary judgment on her hostile work environment claim, March must present evidence that would establish the harassment was so severe or pervasive as to alter the conditions of her employment and create a hostile or abusive working environment.  See Mason v. Southern Ill. Univ., 233 F.3d 1036, 1043 (7th Cir. 2000).  The conduct at issue must be sufficiently severe or pervasive such that a reasonable person would find it hostile and March must subjectively view it as abusive.  See

Murray v. Chicago Transit Auth., No. 99-3774, 2001 WL 493433, at
*6 (7th Cir. May 10, 2001). Whether the conduct is objectively
severe requires the court to look at the totality of the
circumstances, including the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance. See
id.

Because the court found in a previous order that any alleged
racial harassment occurring before June 10, 1997 would be
untimely, and March has not argued the "continuing violation"
theory, see Freeman v. Madison Metro. Sch. Dist., 231 F.3d 374,
381 (7th Cir. 2000), her hostile work environment claim is
necessarily limited to conduct occurring between June 10, 1997,
and July 29, 1997 (approximately the last date March worked
before being put on maternity leave). Nevertheless, March's
description of what took place during those six or seven weeks,
including her immediate supervisor (Lieutenant Gary Edgren) using
the word "nigger" (and various derivatives of that word) in front
of her on a number of occasions, as well as coworkers telling
derogatory and racially offensive jokes about black people on a
near daily basis to "get under her skin," is enough (once again,

just barely enough) to allow March to present this claim to a jury. See Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993) (stating that perhaps no single act can more quickly "alter the conditions of employment and create an abusive working environment" than a supervisor's use of an unambiguously racial epithet such as "nigger" in the presence of his subordinates and a supervisor's use of that term impacts the work environment far more severely than its use by coequals).

### III. CONCLUSION

For the reasons stated above, the Airport's motion for summary judgment is granted in part and denied in part. To be clear, March may proceed only on her claim of retaliation based on the August 1997 employment action (i.e., the decision to put her on involuntary maternity leave rather than assign her to a light duty position) and her claim of a racially hostile working environment. March's claim of retaliation based on the May 1997 employment action (i.e., the removal of her supervisory powers) is hereby dismissed.

E N T E R:

_____
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT


DATED: ___May 16, 2001___